T.C. Summary Opinion 2001-47

UNITED STATES TAX COURT

HEM C. AND KRISHNA GUPTA, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 15534-99S.          Filed April 3, 2001.

Bradley S. Shannon, for petitioners.

Paul K. Voelker, for respondent.

COUVILLION, Special Trial Judge: This case was heard
pursuant to section 7463 in effect at the time the petition was
filed.[1] The decision to be entered is not reviewable by any
other court, and this opinion should not be cited as authority.

Respondent determined a deficiency of $5,094 in petitioners'
1996 Federal income tax.

_____

[1] Unless otherwise indicated, subsequent section
references are to the Internal Revenue Code in effect for the
year at issue.

The issues for decision are whether petitioners, under section 165, are entitled to a deduction in 1996 for either an ordinary abandonment loss or a theft loss in the amount of $25,800. On brief, respondent agrees that petitioners sustained an ordinary loss of $25,800 due to abandonment but contends that the loss was not sustained by petitioners during 1996. Petitioners contend they sustained the loss during 1996 either by a theft that they discovered during 1996 or by an abandonment that occurred during 1996.[2]

Some of the facts were stipulated. Those facts, with the annexed exhibits, are so found and are incorporated herein by reference. At the time the petition was filed, petitioners were legal residents of Las Vegas, Nevada.

Sometime in early 1994, Hem Gupta (petitioner) responded to an advertisement in a Las Vegas newspaper soliciting participants in a trade or business activity that involved the sale of telephone debit cards and musical greeting cards. The promoter of the enterprise was a company based in Atlanta, Georgia, known as Business Motivations, Inc./Telebanc (BMI). On or about March 24, 1994, after having been contacted by BMI, petitioner agreed

---

[2] It appears that petitioners' claim to an abandonment loss is not based on respondent's concession but is based on petitioners' contention of an abandonment of their claim for reimbursement or recovery of the moneys paid by petitioner to the promoter of the aborted business activity described more fully in the following pages.

to become a distributor for BMI. The financial outlay required by BMI was $24,900, of which petitioner paid $12,500 initially, and the remainder shortly thereafter. The activity involved the placement of display stands, preferably in supermarkets, on which the greeting cards were displayed for purchase, along with brochures describing the telephone debit cards. A customer desiring a telephone debit card would present the brochure at the checkout counter, and the cashier would activate a telephone card for a certain number of minutes allowable for telephone use. For the $24,900 paid by petitioner, he was to receive display stands to be placed at 12 locations, 2,400 telephone debit cards, and 4,800 greeting cards and envelopes. On the suggestion of BMI, petitioner engaged the services of Silver Star Locating of Arlington, Texas, to find suitable locations for the 12 display stands. The cost for that service was $3,600. Petitioner made one payment of $3,000. The agreement with Silver Star Locating allowed for cancellation. However, if the agreement was canceled, Silver Star Locating was entitled to retain 25 percent of the $3,600 contracted amount. Petitioner elected to cancel the contract, and, on June 7, 1994, Silver Star Locating refunded $2,100 to petitioner, retaining $900 (or 25 percent of the $3,600 contracted amount) as a forfeited fee.

Problems also developed between petitioner and BMI. BMI did not immediately ship the necessary merchandise to petitioner to

enable him to commence the activity. It appears that petitioner became aware that telephone debit cards of competitors were being marketed in Las Vegas for amounts less than those of BMI. Petitioner complained about this to BMI; however, the record does not reflect whether BMI addressed this complaint.

Petitioner later decided that, in lieu of distributing the musical greeting cards, since BMI also promoted the sale of Medical Emergency Response Cards (MERC), petitioner would instead market MERC. BMI agreed to this switch. MERC were programmed to contain vital medical information of the holder so that, in an emergency, if the cardholder was incapacitated, such information would be available by telephone.

BMI did not immediately send the MERC to petitioner, although the record shows petitioner made several telephone requests to BMI during 1994 in order that he could commence his business. However, in a letter to BMI dated May 31, 1994, petitioner, expressing frustration, requested his money back. On July 18, 1994, BMI shipped some of the telephone debit cards and brochures; however, BMI did not provide the store locations with the necessary computer to activate the cards. In a letter to BMI dated July 27, 1994, petitioner concluded the letter with the following:

The last four months have only proved that there is no product, no marketing and no organization. It is only a garage operation. I again request immediate refund of my money.

On August 17, 1994, petitioner, through a prepaid legal services plan, engaged an attorney from Norcross, Georgia, who wrote BMI declaring that the contract with petitioner had been breached and demanded the return of the amounts petitioner had paid to BMI. Petitioner also contacted, during 1994, the Better Business Bureau of Atlanta, Georgia, requesting information for filing a complaint against BMI. This action by petitioner apparently prompted BMI to attempt a reworking of the agreement with petitioner. That was confirmed in a letter by petitioner to BMI dated August 24, 1994. However, BMI apparently did not live up to the terms and conditions of that agreement. BMI did ship MERC and brochures to petitioner but no display stands nor information as to the locations for the display stands for which BMI had assumed responsibility in the new agreement. Petitioner returned the MERC to BMI on October 24, 1994.

On November 21, 1994, petitioner wrote his attorney and stated: "as of now I seek your help in getting full refund of my money immediately plus expenses and damages with no ifs, buts, or any reasoning what-so-ever." On the same date, petitioner wrote directly to BMI stating: "This is my FINAL notice and request for REFUND OF MY MONEY." In that letter, petitioner requested

$27,828.81. On December 27, 1994, petitioner wrote his attorney requesting that he file suit against BMI and file a lien against BMI. Such action was not taken by petitioner's attorney because the requested work went beyond what the attorney was required to do under the prepaid legal services agreement. Petitioner did not independently pursue legal action against BMI, nor did petitioner receive any money from BMI as he had demanded in his November 21, 1994, letter to BMI. Further, BMI did not ship any further materials to petitioner. Although petitioner at trial contended he made continued demands on BMI on his own and through his attorney up to November 1995, there was no written documentation offered into evidence to support these claims, nor was any documentary evidence offered regarding communications between petitioner and BMI during 1996. During 1996, petitioner contends he came to realize that he would not recover any amount from BMI.

On their 1996 Federal income tax return, petitioners filed a Schedule C, Profit or Loss From Business, on which they reported their transaction with BMI as a business activity for "Sales of Medical Response Systems". They reported no gross receipts, $25,800 cost of goods sold, and negative gross income of $25,800. Petitioners claimed office expenses of $120 and a net loss of $25,920. In the notice of deficiency, respondent disallowed the $25,800 cost of goods sold and $927 in itemized deductions

resulting from the $25,800 disallowance for cost of goods sold.[3] At trial and on brief, petitioners presented their case as a claim for a loss under section 165.

Section 165(a) allows as a deduction any loss sustained by a taxpayer during the taxable year that is not compensated for by insurance or otherwise. Under section 165(c), in the case of an individual, the deduction under section 165(a) is limited to (1) losses incurred in a trade or business; (2) losses incurred in any transaction entered into for profit, though not connected with a trade or business; and (3) losses of property not connected with a trade or business or a transaction entered into for profit, if such losses arise from "fire, storm, shipwreck, or other casualty, or from theft." This latter deduction is subject to additional limitations under section 165(h).[4]

As noted earlier, respondent, on brief, conceded that petitioners sustained an ordinary abandonment loss in the amount of $25,800, but respondent disagrees that this loss was sustained

---

[3]    In a trial memorandum, respondent stated that allowance of the $120 in office expenses claimed on Schedule C of petitioners' return was inadvertent; however, respondent did not file an answer or otherwise move to increase the deficiency with respect to this item.

[4]    Sec. 165(h)(1) allows the loss deduction only to the extent that the amount of the loss from each casualty exceeds $100, and sec. 165(h)(2) generally allows the net casualty loss deduction only to the extent the net casualty losses exceed 10 percent of the taxpayer's adjusted gross income.

in 1996. As a result of respondent's concession, the Court need not address whether the agreed loss was incurred by petitioners in a trade or business or in a transaction not connected with a trade or business but entered into for profit, nor does the Court need to decide whether petitioners' loss was an abandonment loss. See secs. 1.165-2(a), 1.167(a)-8, Income Tax Regs. Petitioners contend they sustained a theft loss and that the loss was sustained during 1996.

The basic question, therefore, is factual: whether petitioners sustained their loss during 1996. The documentation offered into evidence at trial dealt almost exclusively with the year 1994, consisting of various communications between petitioner, his attorney, and BMI. There was no documentary information offered into evidence between petitioner and BMI during 1995, although petitioner claimed he continued making demands on BMI that year. During 1996, however, the record does not reflect any communications between petitioner or his attorney with BMI. Petitioners have not pointed to any factual event that occurred during 1996 that would relate to the loss in question. Section 1.165-1(d)(2)(i), Income Tax Regs., provides, in pertinent part: "When a taxpayer claims that the taxable year in which a loss is sustained is fixed by his abandonment of the claim for reimbursement, he must be able to produce objective evidence of his having abandoned the claim, such as the execution

of a release."  There is no objective evidence that petitioner abandoned the claim with BMI during 1996.  The record does not support a finding that petitioners sustained an abandonment loss during 1996.  The Court sustains respondent on this issue.

With respect to petitioners' claim that the loss was a theft loss, section 165(e) provides that any loss arising from theft is treated as sustained during the taxable year in which the taxpayer discovers the loss.  See sec. 1.165-8(a)(2), Income Tax Regs.  Section 1.165-1(d)(3), Income Tax Regs., provides generally that, if, in the year of discovery of the theft, there is a reasonable prospect for recovery, the theft loss related thereto is not considered sustained "until the taxable year in which it can be ascertained with reasonable certainty whether or not such reimbursement will be received."  On this record, the Court is satisfied that petitioners were reasonably certain, prior to 1996, that they would not be reimbursed by BMI.  The record does not support petitioners' claim that they sustained a theft during 1996.  The record, moreover, does not satisfy the Court that a theft occurred.  However, if a theft did occur, the Court is satisfied it did not occur during 1996.  Respondent, therefore, is sustained on this issue.

Reviewed and adopted as the report of the Small Tax Case Division.

Decision will be entered for respondent.